IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> AARON THOMAS, <br><br> Defendant. | CRIMINAL ACTION <br> NO. 12-483 |

**OPINION**

**Slomsky, J.**                                                                                                    **October 26, 2023**

**I.      INTRODUCTION**

      Defendant Aaron Thomas ("Defendant"), who is serving a 180-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), the compassionate release statute. In his Motion (Doc. No. 30), Defendant asks the Court to "reduce his sentence to time served." (Id. at 1.)  He argues that the Court should grant his Motion because the COVID-19 pandemic, the conditions at his prison, and his underlying health conditions amount to extraordinary and compelling circumstances justifying his release.  (Id. at 5-7.)  Defendant also contends that his release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors because of the length of time he has already served, his lack of significant disciplinary issues, and his participation in rehabilitative programs.  (Id. at 7-10.)  The Government opposes Defendant's Motion, citing Defendant's vaccination against COVID-19, the danger Defendant presents to the community, the seriousness of his underlying offenses, his lengthy criminal history, and the numerous measures the United States Bureau of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities.  (Doc. No. 31.)  For the reasons that follow, Defendant's Motion (Doc. No. 30) will be denied.

1

## II. BACKGROUND

### A. Defendant's Criminal History

Defendant is presently incarcerated at the Federal Correctional Institution ("FCI") at Allenwood, Pennsylvania, after committing six unarmed bank robberies, in violation of 18 U.S.C. § 2113(a). (Doc. No. 20 at 1.) On August 10, 2012, Defendant was arrested for the robbery of the PNC bank in Abington, Pennsylvania. (Id.) Before Defendant was apprehended by police, he attempted to elude capture by engaging in a high-speed chase. (Doc. No. 31 at 2.) During the chase, Defendant "collided with two police cars" and "struck several civilian vehicles, including a tanker truck." (Id. at 1-2.) As a result, two officers sustained non-fatal injuries, but a police dog, which had been riding in one of the cars, suffered injuries that eventually resulted in the dog being put down. (Id. at 2.)

Additionally, Defendant's prior criminal history is extensive. He has been sentenced sixteen times in federal and state court for crimes dating back to 1980. (Id.) Many convictions pertained to robbery and other theft crimes. (Id.) Moreover, he committed the instant offenses while on parole for forgery. (Id.) Due to the egregious nature of Defendant's present offenses, his lengthy criminal history, and other factors, the Court sentenced him on June 27, 2013 to serve 180 months incarceration to be followed by three years of supervised release. (Doc. No. 30 at 4.) As of the date of this Order, Defendant has been in custody for approximately 150 months.

### B. Defendant's Motion for Compassionate Release

On April 20, 2022, Defendant filed his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 30.) In the Motion, Defendant asks the Court to "reduce his sentence to time served" because his health conditions and the threat of contracting COVID-19 at

2

FCI Allenwood are "extraordinary and compelling" reasons to reduce his sentence. Moreover, he asserts that the 18 U.S.C. § 3553(a) sentencing factors weigh in favor of release. (Id. at 3-4.)

Regarding his underlying medical issues, Defendant states that he "suffers from several chronic health conditions which are irreversible and ultimately fatal." (Id. at 4.) Namely, he states that his heart has a reduced ejection fraction of 35%, while a normal adult heart has an ejection fraction of 55%-70%. (Id.) Defendant states that this condition is both degenerative and permanent, and that his heart is "severely and irrevocably damaged." (Id.) Moreover, he asserts that his heart disease, in conjunction with suffering from "hypertension, hyperlipidemia, and obesity," present a risk of blood clot formation, myocardial infarction, stroke, and aneurysm. (Id. at 5.) Defendant notes that he has already developed blood clots in his kidneys. (Id. at 7.) To support his contention that his heart disease is an extraordinary and compelling reason for release, Defendant argues that the Federal Sentencing Guidelines provide that extraordinary and compelling reasons exists where "[t]he defendant is suffering from a terminal illness." (Id.)

Despite having received both doses of the Pfizer COVID-19 vaccine, Defendant argues that the risk to his health from the virus remains because he has already contracted COVID-19 twice while at FCI Allenwood. (Id. at 5.) He further asserts that BOP does not provide adequate care for his health conditions and fails to mitigate the spread of COVID-19 at the facility. (Id. at 7.) Regarding the mismanagement of his health conditions, Defendant states that BOP doctors "took him off his heart rate medication" and that he is "not currently taking any anticoagulation medication." (Id. at 5.) For this reason, he is "currently not receiving the treatment necessary to control his heart rate and blood flow." (Id. at 7.) Additionally, Defendant notes that FCI Allenwood has had 427 confirmed cases of COVID-19 among inmates and staff, including one

3

death, which demonstrates that the facility does not "adequately protect or care for" Defendant. (Id.)

Finally, Defendant claims that the 18 U.S.C. § 3553(a) factors weigh in favor of his release. (Id. at 9.) Defendant states that he has already served in excess ten years of his fifteen-year sentence. (Id. at 11.) He also claims that he "has made tremendous strides toward rehabilitation" through participating in rehabilitative programs and accepting responsibility for his actions. (Id.) With the exception of a few minor disciplinary issues eight years ago, Defendant has remained incident-free in prison for the last eight years of his sentence. (Id.) In sum, Defendant claims that he has been rehabilitated and serving the remainder of his sentence is needless in light of the 18 U.S.C. § 3553(a) factors. (Id. at 10.)

      **C.**      **Government's Response in Opposition to Defendant's Motion**

On May 9, 2022, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 31.) In its Response, the Government submits that Defendant's Motion should be denied because Defendant is fully vaccinated against COVID-19 and therefore the spread of the virus no longer presents an "extraordinary and compelling" reason for a reduction of his sentence. (Id. at 13, 14.) Further, the Government asserts that the BOP provides adequate healthcare and imposes COVID-19 prevention measures, and that the 18 U.S.C. § 3553(a) factors weigh against Defendant's release. (Id. at 6, 16.)

Regarding Defendant's medical conditions, the Government recognizes that Defendant suffers from "significant heart issues." (Id. at 3.) But the Government asserts that "Defendant makes no claim that he is unable to provide self-care while in prison or that he suffers from any terminal disease." (Id. at 12.) Additionally, the Government argues that BOP is attentive to his health issues and provides regular medical care, noting that Defendant reported to BOP in April

2022 that he "felt well and did not suffer from 'any chest pain, shortness of breath, or any other cardiac issues at this time.'" (Id. at 3.)

Further, the Government highlights BOP's response to the COVID-19 pandemic, citing the fact that the BOP offers vaccines to every inmate and staff member, the BOP assesses mitigation procedures daily, and the total number of inmates at BOP prisons has been reduced. (Id. at 5-6.) In addition, the Government notes that at FCI Allenwood, there are no inmates that are currently reported as positive and there has been no COVID-19 related death at the facility. (Id. at 6.)

As for the § 3553(a) sentencing factors, the Government argues that "[D]efendant's risk of danger to the community, his vaccination, and BOP's strenuous efforts to protect inmates against the spread of COVID-19 – counsel strongly against relief." (Id. at 16.) The Government submits that Defendant suffered from heart problems throughout his criminal career, yet "he kept robbing banks and committing other crimes anyway." (Id.) Moreover, the Government posits that "the Court was well aware of [Defendant's] significant medical issues at the time of sentencing and still imposed a sentence of 180 months." (Id.) Finally, the Government concludes that "Defendant fails to demonstrate how release, only about two-thirds of the way through a 15-year sentence, reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the offenses."[1] (Id.)

**III. DISCUSSION**

    **A. Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)**

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general

---

[1] As of this date. Defendant is more than two-thirds through his 15-year sentence.

"rule of finality," including the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Freeman v. United States, 564 U.S. 522, 526 (2011). As amended by the recently enacted First Step Act, it empowers a district court to modify a term of imprisonment on a defendant's motion after that defendant has exhausted his administrative remedies.[2] 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Although Congress has not defined the term "extraordinary and compelling reasons", except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United

---

[2] A Defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or a lapse of 20 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); see also United States v Harris, 973 F.3d 170, 171 (3d Cir. 2020) (holding prisoner need not fully exhaust administrative rights if thirty days pass from the warden's receipt of compassionate release request). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3583(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion. On December 1, 2020, Defendant sent a request for compassionate release to the Warden at FCI Allenwood. (Doc. 30 at 6.) Defendant was denied relief by the warden on or about January 22, 2021. (Id.) Since the BOP responded adversely to Defendant's request prior to the filing of the instant Motion on April 20, 2022, he has met the exhaustion requirement.

States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), ... that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; ...
>
> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement

U.S.S.G. § 1B1.13.

Application Note 1 to U.S.S.G. § 1B1.19 n.1 discusses the meaning of "extraordinary and compelling reasons" and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. See § 1B1.19 n.1 (A)-(C). This Note states:

> (A) Medical Condition of the Defendant
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> > (I) suffering from a serious physical or mental condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant
>
> (i) is at least 65 years old;

      (ii)      is experiencing a serious deterioration in physical or mental health because of the aging process; and

      (iii)     has served at least 10 years or 75% of his or her term of imprisonment, whichever is less.

(C) Family circumstances.

      (i)       The death or incapacitation of the caregiver of the defendant's minor child or minor children.

      (ii)      The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1 (D).

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 WL 3046086 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary or compelling reasons warranting a sentence reduction under § 3582(c)(1)(A).[3] See Rodriguez, 451 F. Supp. 3d at 395.

---

[3] Before the First Step Act of 2018, motions for compassionate release could only be filed by the United States Bureau of Prisons. However, the First Step Act changed this limitation and permitted courts to grant compassionate release upon an incarcerated person's own motion. In passing the First Step Act, Congress amended Section 3582(c)(1)(A) for the express purpose of facilitating the use of sentence reduction motions. The United States Sentencing Commission has recently proposed an amendment to the Federal Sentencing Guidelines that reflects this change. November 1, 2023 would be the effective date. This Amendment will revise Compassionate Release Policy Statement, Section 1B1.13, to reflect that a defendant may now file a motion under 18 U.S.C. § 3582(c)(1)(A), rendering the policy statement applicable to motions filed both by defendants and the Bureau of Prisons. The Court has reviewed the proposed amendments to Section 1B1.13, and, if adopted, they would not change the decision of the Court in this Opinion.

In the context of a motion for compassionate release based on the threat of COVID-19, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually in a significant degree, in the facility where the prisoner is incarcerated." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020). Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure of COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

(1) the nature and circumstances of the offense and the history of the characteristics of the defendant

(2) the need for the sentenced imposed –

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . .

18 U.S.C. § 3553(a)(1)-(2), (6). Therefore, if the balance of a defendant's extraordinary and compelling reasons with the Section 3553(a) factors supports a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

  **B. Defendant's Motion for Compassionate Release Will be Denied**

Defendant's Motion will be denied. Even if Defendant's heart problem is an extraordinary and compelling reason for his release, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence. Moreover, COVID-19 is no longer present to a significant degree at FCI Allenwood, and Defendant has been vaccinated for this virus.

  1. <u>Defendant's Heart Condition May Present an Extraordinary and Compelling Reason for His Release</u>

Defendant asserts that heart condition with reduced ejection fraction is an "irreversible and fatal diagnosis." (Doc. No. 30 at 7.) For the purposes of this Motion, the Court will assume, without deciding, that Defendant's heart condition with reduced ejection fraction presents an extraordinary and compelling reason for release in light of the COVID-19 pandemic. Under Application Note 1 to Section 1B1 of the Sentencing Guidelines, "extraordinary and compelling reasons exist . . . if the defendant is suffering from a terminal illness . . . [e]xamples include . . . end-stage organ disease." <u>See</u> § 1B1.13 n.1 (A)(i). Moreover, the Guidelines provide that "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." <u>Id.</u> Since, under this criterion, the Court will consider Defendant's heart condition

10

as an extraordinary and compelling reason for his release, the Court need not address whether his other medical conditions also meet this threshold.

In response, the Government contends that "Defendant makes no claim . . . that he suffers from any terminal disease." (Doc. No. 31 at 12.) Reviewing the medical records attached to Defendant's Motion does not provide a clear resolution of the opposing claims about the effects of his heart condition. (Doc. No. 30 at 16-54.) Although Defendant claims that "[r]ecent cardiac imaging recorded an ejection fraction of 35%," there is no mention of "reduced ejection fraction" or the "recent cardiac imaging" in the medical records. (Doc. No. 30 at 4.) Instead, the records reference treatment for "old myocardial infarction (heart attack), heart disease, unspecified, and acute embolism and thrombosis." (Id. at 16.) While it is unclear whether Defendant's heart issues are terminal, the Government concedes that he suffers from "significant medical issues." (Doc. 31 at 3.)

However, to the extent that Defendant's health conditions may be impacted by the threat of COVID-19, the Court notes that courts in this District have denied compassionate release when a defendant had been – or soon would be – vaccinated against COVID-19. See, e.g., United States v. Hannigan, No. 19-373 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (stating that vaccination against COVID-19 lessens the risk of serious illness or death, such that the threat of COVID-19, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release); United States v. Berry, No. 09-116, 2021 WL 3537145, at *3 (E.D. Pa. Aug. 11, 2021) (finding that while the defendant suffered from conditions making him more vulnerable to serious illness or death from COVID-19, his vaccination status provided sufficient protection against the risks). Here, Defendant concedes that he is "fully vaccinated and has received a booster shot." (Doc. No. 30 at 5.)

11

Additionally, the Court notes that the threat of COVID-19 is no longer present to a significant degree at FCI Allenwood. As of the filing of this Order, there are no inmates or staff members who are reported positive. See BOP COVID-19 Statistics, FEDERAL BUREAU OF PRISONS (Sep. 19, 2023), https://www.bop.gov/coronavirus/covid19_statistics.html.

Thus, although Defendant's heart condition may be an extraordinary and compelling reason for his release, the fact that he has been vaccinated for COVID-19, his heart condition being properly treated at FCI Allenwood, and the low incidence of COVID-19 at the facility, all point to the denial of compassionate release at this time.[4]

### 2.    The Section 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

The relevant § 3553(a) factors weigh against a reduction or modification of Defendant's sentence that would be permit him to be released from custody.

As a threshold matter, courts in this District have denied compassionate release in similar cases where, despite extraordinary and compelling circumstances warranting a defendant's release, the § 3553(a) sentencing factors heavily weighed against granting such relief. See, e.g., United States v. Glenn, No. 15-99, 2021 WL 3190553, at *7 (E.D. Pa. July 28, 2021) (denying compassionate release because, notwithstanding defendant's diabetes, "the relevant § 3553(a) factors d[id] not support his compassionate release to home confinement or a sentence reduction"); United States v. Spivey, 471 F. Supp. 3d 621, 623 (E.D. Pa. 2020) (footnote omitted) (denying compassionate release based on § 3553(a) sentencing factors despite "assum[ing] . . . that

---

[4] Defendant turned 58 years old on August 18, 2023. (See Doc. No. 30 at 16.) He does not suffer from a serious cognitive impairment, and he is not the primary caregiver to any minor children. See § 1B1.13 n.1 (A)-(C). Thus, these factors as listed in the Sentencing Guidelines Manual, see § 1B1.13 n.1 (A)-(C), are not relevant here.

[d]efendant's underlying health conditions . . . present extraordinary and compelling reasons for compassionate release in light of the COVID-19 pandemic.").

Turning to the § 3553(a) sentencing factors and their application to Defendant, the relevant factors counsel against Defendant's release at this time. First, this Court has examined the nature and circumstances of the offense, as well as Defendant's history and characteristics. See 18 U.S.C. § 3553(a). As stated above, Defendant pled guilty to six counts of bank robbery, and he has an extensive criminal history dating back to 1980. Further, the Government notes that "[t]hroughout almost all his criminal career, Thomas suffered from heart ailments . . . ." (Doc. No. 31 at 16.) Moreover, given this background and the above information set forth about his heart condition, treatment, and vaccination, there is no assurance that Defendant would refrain from criminal activity if released. He still poses a danger to the community.

Second, the Court also has considered whether Defendant's release would reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See 18 U.S.C. § 3553(a)(2)(A)-(C). Defendant has served approximately 150 months of his 180-month sentence. The Government asserts that "the Court was well aware of [Defendant's] significant medical issues at the time of sentencing." (Doc. No. 31 at 16). Despite Defendant's contention that he "no longer poses a danger to the community" because he "made tremendous strides toward rehabilitation," a reduction in his sentence at this point would not serve any of the above considerations.

Finally, the Court has examined whether compassionate release would provide Defendant with medical care in the most effective manner. See 18 U.S.C. § 3553(a)(2)(D). Defendant alleges that he does not receive the treatment necessary to control his heart rate and blood flow at FCI Allenwood because the doctors took him off of heart rate medication. (Doc. No. 30 at 5, 7.)

13

However, the Government states that BOP has been "very attentive" to his medical issues. (Doc. No. 31 at 3.) In fact, Defendant reported to the BOP medical staff that he felt well. (See id.) Thus, for all these reasons, the § 3553(a) factors counsel against Defendant's release at this time. Accordingly, the Motion (Doc. No. 30) will be denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 30) will be denied. An appropriate Order follows.